UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CARMEN TARISHA JONES and          )
SEANA GOODSON,                    )
                                  )
        Plaintiffs,               )
                                  )
vs.                               )    Civil Action No. CV96-S-857-S
                                  )
BORG-WARNER PROTECTIVE            )
SERVICES d/b/a                    )    ENTERED
WELLS FARGO and WELLS FARGO       )
GUARD SERVICES,                   )    DEC 2 2 1997
                                  )
        Defendant.                )

## MEMORANDUM OPINION

Plaintiffs Carmen Tarisha Jones and Seana Goodson allege defendant discriminated against them on the basis of their race (African-American) in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et seq. The action presently is before the court on defendant's motion for summary judgment.[1] Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes the motion is due to be granted in part and denied in part.

### I.  BACKGROUND

Defendant hired plaintiff Carmen Tarisha Jones in September of 1994 as an accounts payable clerk in the Birmingham, Alabama office of Wells Fargo Guard Services ("Wells Fargo"). (Complaint ¶ 12.)

---

[1]Plaintiffs also filed a motion to strike defendant's reply brief, additional evidentiary materials, and additional statements of fact. This court's August 27, 1997 order, however, gave permission to defendant to file such materials. Plaintiff's motion to strike is thus due to be denied.

In that position, Jones filed insurance claims for employees, paid bills, and invoiced clients. (Jones deposition at 99-100.)

Wells Fargo hired plaintiff Seana Goodson as a security guard in September of 1994. Goodson was promoted to dispatcher in the Birmingham office within her first week of employment. (Complaint ¶ 13; Goodson deposition at 62-63.) A "dispatcher" located replacements when security guards were absent from work (Goodson deposition at 61; Sturkey deposition at 56-59) and managed time records for the guards' payroll. (Goodson deposition at 61.)

Defendant appointed Randall K. Sturkey manager of the Birmingham Wells Fargo office in November of 1994, and directed him to rectify "problems" in that operation, which included declining profits ($10,000 to $12,000 each month), declining client base, and deviations from company policies. (Sturkey deposition at 15.) Sturkey made several changes, including moving the office to another location charging less rent, meeting with clients to discuss criticisms, selling excess vehicles and weapons, and restructuring the office staff. His restructuring efforts included the elimination of Goodson's dispatching position, because her primary duty of finding replacement guards could be performed through Wells Fargo's national communications center. (Id. at 55, 57-58.) Sturkey's personal observations of Seana Jones indicated that she performed little productive work, and that her primary duty (creating invoices of bills for major clients) also could be accomplished through Wells Fargo's national office. (Id. at 95-100.) Consequently, on November 20, 1994, Sturkey and personnel

2

manager Karen Leonard informed both plaintiffs that their positions were to be eliminated.[2]  (*Id.* at 105.)  Even so, both Jones and Goodson were offered continued employment as security guards at their same rates of pay.  (Sturkey deposition at 101-03, Jones deposition at 120-21; Goodson deposition at 66.)  Neither accepted the offer.  Goodson elected to resign from employment with Wells Fargo on November 20, 1994.  (Jones deposition at 120; Goodson deposition at 66-68.)

Wells Fargo also offered Carmen Jones the position of receptionist.  (Jones deposition at 130-31.)  She initially accepted that offer, and performed that job for approximately two days before informing personnel manager Karen Leonard that she had found other employment.  (Leonard affidavit ¶ 6.)

There was an opening for an "administrative assistant" in the Birmingham office on the date plaintiffs' jobs were eliminated. That position required: typing; filing financial reports, memoranda, and letters; auditing a cash disbursement report; managing a supply room and inventory; and, performing background checks on potential employees.  (Sturkey deposition at 121-25.) Randall Sturkey testified that he "talked to" plaintiffs about that position, but did not formally offer the position to either, because both allegedly said they could not type.  (Sturkey

---

[2]Sturkey also eliminated the positions of the following employees: Alfreda Weatherly (African-American filing clerk); Cherise Yasmeen (African-American receptionist); Mel Campbell (white field supervisor); Arthur Hall (African American dispatcher); M. Starr (white patrol officer); F. Holt (white patrol officer); and, J.B. Roberts (white patrol officer).  (Defendant's answers to interrogatories ¶ 2.)

3

deposition at 77-78.)  Wells Fargo eventually hired a white female, Heather Crenshaw, as administrative assistant.

Carmen Tarisha Jones and Seana Goodson each filed charges of discrimination with the Equal Employment Opportunity Commission on the same day, March 3, 1995, and received notices of rights to sue on January 30, 1996.   (Complaint ¶¶ 9, 11.)   They commenced this action on April 4, 1996.

## II.  DIRECT EVIDENCE

To prevail on a disparate treatment claim, plaintiffs must prove their employer intended to discriminate against them because of their race.  *See, e.g., Armstrong v. Flowers Hospital, Inc.,* 33 F.3d 1308, 1313 (11th Cir. 1994).   The evaluation of evidence bearing on the employer's intent differs, depending upon whether the proof is direct or circumstantial in nature.

When a plaintiff establishes by direct evidence that a contested employment decision was motivated by a discriminatory animus, the employer "may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender [race, religion, color, national origin, age, or disability] into account."  *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989)(emphasis supplied).   In other words, "defendant must prove that there was a separate, racially neutral [*i.e.,* non-discriminatory] reason for its" contested employment decision.  *E.E.O.C. v. Alton Packaging Corp.,* 901 F.2d 920, 925 (11th Cir. 1990) (emphasis supplied).

4

The only direct evidence alleged by plaintiffs is a double hearsay statement attributed to Randall Sturkey's predecessor, David Hicks. Following his own termination from employment with Wells Fargo, Hicks allegedly told plaintiffs that Wells Fargo's district manager, John Elias, made the statement "that there were too many black people working in that office." (Jones deposition at 109; *see also* Goodson deposition at 87-90.) This court may consider that statement, because it could be reduced to admissible form at trial through the testimony of David Hicks. *McMillian v. Johnson*, 88 F.3d 1573, 1584-85 (11th Cir. 1996), *aff'd*, ___ U.S. ___, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1135, *modified*, 102 F.3d 1118 (11th Cir. 1996).

Even so, there is no evidence that John Elias was involved in the decision-making process leading to the elimination of plaintiffs' jobs. "For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision." *Trotter v. Board of Trustees of University of Alabama*, 91 F.3d 1449, 1453-54 (11th Cir. 1996). Elias testified by affidavit as follows:

> 3. I never supervised Randy Sturkey in any capacity, including his position as manager of the Birmingham office.
>
> 4. I had no involvement whatsoever in the reorganization of the Birmingham office and did not participate in any decisions related to the reorganization or the elimination of positions, nor did I have any authority over the Birmingham office at the time of the reorganization.

5

(Elias affidavit ¶¶ 3, 4.)   Plaintiffs present no evidence to
rebut Elias's averments, or indicating that Elias played any role
in the reorganization of the Birmingham Wells Fargo office.  Thus,
even if Elias made the statement attributed to him, it does not
constitute direct evidence of discrimination against plaintiffs.

### III.   CIRCUMSTANTIAL EVIDENCE

When a Title VII plaintiff's evidence of discrimination is
circumstantial in nature, the Supreme Court has prescribed a three
stage framework for focusing the inquiry.  *See McDonnell Douglas
Corp. v. Green* , 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973);
*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248,
252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981); *St. Mary's
Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d
407 (1993).  First, plaintiffs must establish a *prima facie* case.
Where, as in this action, a position is eliminated in its entirety,
the Eleventh Circuit has adopted a variation of the *McDonnell
Douglas* test applicable to both job-elimination and reduction-in-
force cases.  *See, e.g., Earley v. Champion International Corp.*,
907 F.2d 1077, 1082-83 (11th Cir. 1990).  Generally, a plaintiff in
a job-elimination case can establish a *prima facie* case by
demonstrating that:   (1) she is a member of a protected class and
was adversely affected by an employment decision; (2) she was
qualified to assume another position at the time of discharge; and,
(3) evidence by which a fact finder could reasonably conclude that
the employer intended to discriminate on the basis of race in
reaching the decision to eliminate plaintiff's position.    *See,*

6

*e.g.*, *Jameson v. Arrow Company*, 75 F.3d 1528, 1531-32, 1533 n.3 (11th Cir. 1996).

If each plaintiff thus establishes a *prima facie* case, thereby giving rise to a presumption of unlawful, disparate treatment, then at the second stage of analysis the burden of production shifts to defendant to rebut the presumption by articulating legitimate, nondiscriminatory reasons for the contested employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendant does so, then in the final step of the inquiry each plaintiff must have an opportunity to show that defendant's stated reasons merely are pretexts for unlawful, discriminatory motives. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

**A.   Plaintiffs'** *Prima Facie* **Cases**

**1.   Adverse employment decision**

Wells Fargo contends that neither plaintiff was adversely affected by an employment decision, because each chose to resign, rather than to accept defendant's offer of security guard positions with equal pay and benefits. In support of that contention, defendant offers Randall Sturkey's testimony that a transfer to security guard was a lateral move from an office position. (Sturkey deposition at 166.)

Both plaintiffs rely upon the same evidence to rebut defendant's contention that a security guard position was but "a lateral move," and to establish that it instead was an "adverse employment action":

7

1.  Defendant's statement that "[a]fter Goodson had worked
    less than a week [as a security guard], Hicks promoted
    her to the position of dispatcher" (defendant's statement
    of undisputed material facts ¶ 3 (emphasis supplied)[3]);
    and,

2.  Defendant's position statement to the EEOC that "Ms.
    Goodson performed well in her assignments and, in less
    than one month, was promoted to the position of
    Scheduler/Dispatcher in the Birmingham District Office."
    (Sturkey deposition exhibit 8 at 1 (emphasis supplied).[4])

Goodson's "promotion" was accompanied by an increase in pay (Goodson

deposition at 62), but there is no evidence that such increase was

the basis for considering the transfer a "promotion."

Therefore, Goodson and Jones both argue that, because

Goodson's move from security guard to the cental office was a

"promotion," a move for either of them from the central office to

security guard was a demotion.   The court concludes the evidence

---

[3]Defendant later asserts that "[a] transfer from an office position to a
security guard position is considered a lateral move and not a demotion by the
company." (Defendant's statement of undisputed material facts ¶ 18.)

[4]Defendant moves to strike its EEOC position statements as hearsay.
Nonetheless, the court finds they are not hearsay, but admissions of a party-
opponent under Rule 801, Fed.R.Evid.
    Defendant also claims the position statements are inadmissable, because
they are not based on the personal knowledge of the person who drafted them. See
Rule 56(e), Fed.R.Civ.P. According to defendant, the employee responsible for
drafting that statement "merely compiled information provided to him by other
individuals into statements of position that were based entirely on hearsay."
(Defendant's reply to plaintiff's opposition to defendant's motion to strike at
2.) That argument simply is a reiteration of its hearsay defense, and will not
be accepted by the court. The statement was Wells Fargo's, and not that of the
employee who drafted it.
    Finally, defendant claims the position statements attached as plaintiff's
evidentiary submissions should be struck because they are unauthenticated. Even
so, those documents were adequately authenticated during Randall Sturkey's
deposition (Sturkey deposition at 150-65, exhibits 7,
8.) Therefore, defendant's motion to strike is due to be denied.

8

cited by plaintiffs is sufficient to establish the first element of their *prima facie* cases.

## 2. Evidence of an intent to discriminate

Wells Fargo also claims there is no evidence that it intended to discriminate against plaintiffs during its restructuring of the Birmingham office. The Eleventh Circuit holds:

> where a job for which the plaintiff is qualified, and for which the plaintiff applies, is available at the time of termination, and the employer offers the job to an individual outside the protected group, an inference of intentional discrimination is permissible.

*Jameson*, 75 F.3d at 1532. The parties agree there was an opening for an administrative assistant at the time plaintiffs' positions were eliminated, and that Wells Fargo ultimately hired a white female for that position.[5]

### a. Jones's qualifications and application

Carmen Jones testified that she never heard of the administrative assistant position, and that defendant offered her no position other than security guard and receptionist. (Jones deposition at 130-32.) Wells Fargo effectively admits that Jones was neither told of the opening, nor offered the job, because she could not type. (Sturkey deposition at 77-78.) Where an employer fails to tell an employee of an open position at the time of termination, thereby preventing the employee from applying for such

---

[5] Plaintiffs also presents evidence that a "timekeeper" position was available at the time their jobs were eliminated, and defendant admits that a white male employee was transferred into that position. Even so, plaintiffs present no evidence on the requirements of that job, or their qualifications to perform it. Consequently, they cannot demonstrate an inference of discrimination by reference to that position.

9

a position, the plaintiff may be excused from the requirement of applying for the position. *Stubblefield v. Trinity Industries, Inc.*, 961 F. Supp. 1553, 1557 (M.D. Ala. 1997).

Jones also presents sufficient evidence of her qualifications for the administrative assistant position, because the only qualification which allegedly prevented her from receiving the job was the ability to type. (Sturkey deposition at 77-78.) Jones testified, however, that she could type thirty words a minute at the time her position was eliminated. (Jones deposition at 132.) Therefore, Jones has presented sufficient evidence to support an inference of discrimination.

### b. Goodson's qualifications and application

Goodson only testified regarding the security guard position. (Goodson deposition at 64-77.) She offers no evidence to contradict defendant's assertion that she was not offered the position of administrative assistant because she could not type. Consequently, Seana Goodson has not established that she was qualified for the administrative assistant position, and she fails to demonstrate an inference of discrimination. She has not presented a *prima facie* case and summary judgment is appropriate.

## B. Defendant's Legitimate, Nondiscriminatory Reasons

### 1. Seana Goodson

Even if Goodson were deemed to have presented a *prima facie* case, she has offered nothing to rebut defendant's stated reasons for eliminating her position (*i.e.*, the dispatcher position could be performed by Wells Fargo's national office), and not offering

10

her any position other than a "security guard" (*i.e.*, Goodson was unqualified for any available position other than security guard). (Sturkey deposition at 56-57, 60.)   Plaintiff's only rebuttal evidence is her allegation that Heather Crenshaw was hired as administrative assistant immediately following her termination. That evidence, however, does nothing "to allow a factfinder to disbelieve the employer's proffered explanation for its actions," *Combs v. Plantation Patterns*, 106 F.3d 1519, 1532 (11th Cir. 1997), because Goodson provides no evidence that she was qualified to perform the administrative assistant job.

### 2.    **Carmen Jones**

Defendant claims it eliminated Carmen Jones's position because of Sturkey's beliefs that she performed little productive work, and that her duties could be performed by Wells Fargo's national office. As previously noted, defendant also alleges Jones was not offered the administrative assistant position because she could not type.

Like Seana Goodson, Jones relies upon defendant's decision to hire Heather Crenshaw as evidence of pretext.   Defendant contends the decision to hire Crenshaw is irrelevant, because Jones told Sturkey she could not type.   There is conflicting evidence on that issue, however.       Jones   claims   she   "never   heard"   of   the administrative assistant position, and that defendant offered her no position other than security guard.   (Jones deposition 130-32.) Furthermore, she claims she could type thirty words per minute at the time her position was eliminated.   (*Id.* at 132.)   That evidence

11

is sufficient to establish plaintiff was qualified (albeit minimally) for the administrative assistant position, but defendant hired a white person for the job, rather than transferring Jones. Consequently, Carmen Jones has produced evidence sufficient "to allow a factfinder to disbelieve the employer's proffered explanation" and summary judgment is inappropriate. *Combs*, 106 F.3d at 1532.

## IV. CONCLUSION

For the foregoing reasons, the court determines that defendant's motion is due to be granted as to all claims of Seana Goodson, but denied as to the claims of Carmen Tarisha Jones. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the 22ⁿᵈ day of December, 1997.

United States District Judge

12